1

2

3

4

5

6

7

8 UNITED STATES DISTRICT COURT

9 EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| SHAWN MAXWELL,<br><br>Plaintiff,<br><br>v.<br><br>LISA PACIONE, in her official and individual capacities; REYMONDA MARQUEZ, in her official and individual capacities; CYNTHIA LOO, in her official and individual capacities; MONICA MEZA TRUJILLO; DAVID LEON; KERN COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES; KERN COUNTY,<br><br>Defendants. | Case No. 1:24-cv-00409-JLT-CDB<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANTS' MOTIONS TO DISMISS<br><br>(Docs. 16-17)<br><br>FINDINGS AND TO GRANT DEFENDANTS' MOTIONS TO STRIKE<br><br>(Docs. 18, 19, 25)<br><br>ORDER DIRECTING CLERK OF THE COURT TO TERMINATE MOTION FOR DEFAULT JUDGMENT VOLUNTARILY WITHDRAWN BY PLAINTIFF<br><br>(Doc. 41, 47)<br><br>**21-Day Deadline** |

Plaintiff Shawn Maxwell, proceeding pro se, initiated this action with the filing of a

complaint on April 4, 2024.  (Doc. 1).  On May 17, 2024, defendants Kern County and Kern

County Department Child Support Services ("DCSS"), collectively the "County Defendants,"

filed a motion to dismiss.  (Doc. 16).  On May 20, 2024, defendants Cynthia Loo ("Loo"),

1   Raymonda Marquez ("Marquez") and Lisa Pacione ("Pacione"), collectively the "Superior Court
2   Defendants," filed a motion to dismiss. (Doc. 17). Separately, Defendants Monica Meza Trujillo
3   ("Trujillo") and David Leon ("Leon") each filed a motion to strike Plaintiff's complaint. (Docs.
4   18, 19, 25).[1] Plaintiff filed oppositions to each of the motions (Docs. 21, 22, 23, 36) and all
5   Defendants filed replies (Docs. 27, 28, 32, 40). On June 25, 2024, the assigned district judge
6   referred the pending motions to dismiss and to strike to the undersigned for preparation of
7   findings and recommendations. (Doc. 38).

8          Upon review of the parties' filings, the undersigned deemed the motions suitable for
9   disposition without hearing and oral argument, and accordingly, took the fully briefed motions
10  under submission pursuant to Local Rule 230(g). *See* (Docs. 39, 43). Thereafter, Plaintiff filed a
11  motion for default judgment (Doc. 41) which he subsequently withdrew following the filing by
12  County Defendants' of their opposition. *See* (Docs. 44, 47).

13  **I.      Background**

14         Plaintiff's complaint asserts sixteen causes of action: (1) violations of procedural due
15  process under 42 U.S.C. § 1983 against Defendants Pacione, Loo, and DCSS; (2) violations of
16  substantive due process rights under 42 U.S.C. § 1983 against Defendants Pacione and Marquez;
17  (3) violation of the doctrine of separation of powers against Defendant Pacione; (4) interference
18  with parental rights, against unspecified defendants; (5) abuse of judicial discretion and
19  misconduct for ordering Plaintiff to undergo a drug test against Defendants Marquez and Pacione;
20  (6) failure to adhere to due process against Defendants Clerk of the Court for the Superior Court
21  of Kern County and DCSS; (7) negligence or misconduct against DCSS; (8) violation of equal
22  protection rights under 42 U.S.C. § 1983 against unspecified defendants; (9) fraud and
23  misrepresentation against DCSS; (10) invasion of privacy against Defendants Trujillo and DCSS;
24  (11) judicial retaliation against Defendant Marquez; (12) breach of contract against unspecified
25  defendants; (13) negligent infliction of emotional distress against Defendant DCSS and other

26
27         [1] Defendant Leon filed two motions to strike that are virtually identical except that the second
    motion to strike was noticed for hearing on a different date than the first motion and was accompanied
28  with a proof of service on Plaintiff, whereas the initial motion to strike did not indicate whether service
    had been made on Plaintiff. *Cf.* (Doc. 18 *with* Doc. 25).

1  unspecified defendants; (14) deprivation of rights under color of law against DCSS, Marquez, and

2  Pacione; (15) conspiracy to interfere with civil rights; and (16) frivolous litigation and abuse of

3  process against Defendants Trujillo and Leon. (Doc. 1 pp. 16-32).

4  **A.      The Defendants**[2]

5         Defendant Lisa Pacione ("Pacione") is a judge presiding in the Superior Court of Kern

6  County. (Doc. 1 ¶ 18).  While acting under color of law, Pacione took various judicial actions

7  implicating Plaintiff's custody of and visitation rights over his child and related matters, including

8  that she set aside motions in a prior paternity action (¶ 53), issued a ruling that awarded custody

9  of Plaintiff's child to the mother (¶ 54), denied a motion to dismiss (¶ 59), denied a peremptory

10  challenge (¶ 61), denied a demurrer (¶ 62), denied a request to dismiss the paternity action (¶ 63),

11  denied a request to appoint Plaintiff legal representation (¶ 64), granted a domestic violence

12  restraining order against Plaintiff (¶ 64), denied Plaintiff's request for custody or visitation of his

13  child (¶ 65), and granted Plaintiff supervised visits with his child and ordered him to complete a

14  co-parenting course (¶ 68).  As a result of these actions, Pacione unlawfully disrupted the familial

15  relationship between Plaintiff and his child, which resulted in significant emotional distress and

16  damages.

17         Defendant Raymonda Marquez ("Marquez") is a judge serving in the Superior Court of

18  Kern County.  (Doc. 1 ¶ 19).  While acting under color of law, Marquez ordered Plaintiff to

19  submit to drug tests without probable cause (¶ 46), denied Plaintiff's request for a protective order

20  and mandated Plaintiff surrender custody of his child to Defendant Trujillo, the child's biological

21  mother (¶ 47), altered Plaintiff's visitation rights over his child (*id.*) and rejected Plaintiff's

22  arguments concerning the state court's lack of jurisdiction (¶ 48).  Marquez entered these orders

23  despite the lack of a legal basis for altering the custody arrangement and in the absence of a

24  domestic violence restraining order ("DVRO").  Marquez unlawfully disrupted the familial bond

25  between Plaintiff and his child, causing Plaintiff to experience emotional distress.

26         Defendant Cynthia Loo ("Loo") is a Commissioner (judicial officer) in service with the

27

28         [2] The allegations set forth below are derived from Plaintiff's complaint, which allegations the
Court accepts as true only for purposes of considering Defendants' motions to dismiss and to strike.

Superior Court of Kern County. (Doc. 1 ¶ 20).  While acting under color of law, Loo oversaw proceedings related to paternity and child support involving Plaintiff and Defendant Kern County Department of Child Support Services ("DCSS").  *Id.*  Despite Plaintiff's responsive actions and appearance in court, as well as the questions he raised regarding the validity of a contract for which DCSS based certain claims, Loo granted a default judgment against Plaintiff.  *Id.*  ¶¶ 20, 66.

Although not named in the caption of the complaint and not the subject of a summons issued following Plaintiff's payment of the filing fee, Defendant Clerk of the Court is responsible for administrative handling and management of court documents, filings, and procedural duties within the Superior Court of Kern County.  (Doc. 1 ¶ 24).[3]  The Clerk of the Court permitted Defendant Trujillo to file a petition to establish paternity without adequate review, thereby facilitating a process not clearly authorized under the law.  *Id.* ¶ 24.  In addition, the Clerk of the Court granted Trujillo a fee waiver "expediently and without proper scrutiny" and assigned the case to a specific judge, which contributed to a judicial process prejudicial to Plaintiff's rights and interests.  *Id.*  The Clerk of the Court's procedural handling of Plaintiff's request for a domestic violence restraining order and forcing the action to be filed as an existing paternity case violated Plaintiff's procedural and substantive due process rights. *Id.* ¶ 25.

Defendant Kern County, through the actions of its employees and agents, including judicial officers and staff of Defendant DCSS, contributed to the deprivation of Plaintiff's familial rights through the issuance of custody orders and enforcement actions that were unjustified and lacked proper legal basis.  (Doc. 1 ¶ 27).  Kern County also failed to oversee the conduct of its employees, such as hospital staff involved in presenting to Plaintiff a Voluntary Declaration of Paternity without adequate disclosure, as set forth below. *Id.*

Defendant Department of Child Support Services ("DCSS"), a governmental entity responsible for enforcing child support laws, engaged in actions and omissions relating to

---

[3] For purposes of these findings and recommendations, the undersigned construes the unnamed "Clerk of the Court" to be one of the Doe Defendants named in the complaint caption given that the body of the complaint nowhere mentions any Doe Defendant or otherwise describes the nature, function or capacity of a Doe Defendant.

4

enforcement of child support orders and custody arrangements for Plaintiff's minor child. (Doc. 1 ¶ 23). DCSS failed to properly assess Plaintiff's family circumstances, inaccurately enforced or recommended support orders, and engaged in actions that unjustifiably influenced Plaintiff's custody and parental rights. *Id*.

Defendant Monica Meza Trujillo ("Trujillo") is the coparent of Plaintiff's minor child. (Doc. 1 ¶ 22). Trujillo filed a frivolous court fee waiver, which ultimately resulted in Plaintiff being required to surrender his child to Trujillo. *Id*. ¶¶ 22, 144. Defendant David Leon ("Leon") served as Trujillo's attorney and prosecuted legal actions against Plaintiff that lack a solid legal foundation, including claims for paternity and child support that contradict available evidence and legal standards. *Id*. ¶ 143.

**B.    Factual Allegations**

Plaintiff and Trujillo are the biological parents of Everly, who today is approximately six years old. (Doc. 1 ¶¶ 15, 31). Shortly after Everly's birth, Plaintiff signed a Voluntary Declaration of Paternity ("VDOP") presented to him by hospital staff. *Id.* ¶ 30. On September 24, 2018, Plaintiff executed a Declaration of Paternity Recission (a DCSS form) intending to void the paternity contract with the California Department of Child Support Services ("CDCSS") as neither Plaintiff nor Everly were recipients of public assistance from the county or state, there was no dispute over custody care and control, and there were no active court cases regarding the family or child. *Id*. ¶ 34. On October 22, 2018, CDCSS sent Plaintiff a letter stating that the VDOP had been rescinded. *Id*. ¶ 35.

On September 16, 2021, Trujillo filed a petition to establish a parental relationship against Plaintiff so she could seek a child support order, and thereafter, a request to waive court fees, which the Clerk of the Court granted. *Id*. ¶¶ 36, 38, 39. On or about January 23, 2023, DCSS, under the pretext of a paternity action, filed a supplemental complaint alleging a valid VDOP and asserting Plaintiff's obligation as an obligor, despite the absence of a valid contract or provision to Plaintiff of public assistance to necessitate child support enforcement services. *Id*. ¶ 57. Plaintiff filed a demurrer in state court challenging the standing of DCSS and the jurisdiction of the court based on the lack of a valid VDOP and the absence of public assistance. *Id*. ¶ 58. This

case appears to have been set before Defendant Pacione, who denied Plaintiff's motion to dismiss on January 31, 2023, after finding that paternity was rescinded.  *Id*. ¶ 59.

On February 6, 2023, DCSS submitted a supplemental complaint asserting a claim against Plaintiff, alleging the existence of a valid VDOP, which classified Plaintiff as responsible for a debt.  DCSS did not furnish the actual contract to substantiate its claim, indicating instead that no debt existed and that no public assistance had been extended that would necessitate recoupment.  *Id*. ¶ 60.

On March 2, 2023, Pacione dismissed Plaintiff's request for a change of judge and maintained the case under her jurisdiction.  *Id*. ¶ 61.  Thereafter, on April 10, 2023, Pacione seemingly transferred Plaintiff's request for demurer to Loo given that the demurer involved an action of DCSS.  On April 10, 2023, the case returned to Pacione after Plaintiff did not agree to Loo's presiding over the matter.  *Id*. ¶ 63.  On May 15, 2023, Pacione denied Plaintiff's request for legal representation in his paternity case.  *Id*. ¶ 64.  She also incorrectly claimed that Plaintiff agreed to engage in the child support program to maintain his parental rights.  Pacione made this decision "despite evidence from four witnesses attesting to [Plaintiff]'s primary caregiving role for his child, free from the need for governmental intervention."  *Id*.  In addition, Pacione wrongfully entered a temporary DVRO against Plaintiff without proper notice or probable cause, despite no accusations towards Everly or Trujillo.  *Id*.  Pacione used this DVRO to deny Plaintiff custody or visitation rights. *Id*.

On August 7, 2023, despite Plaintiff's active engagement in the case, Loo issued a default judgment for parental obligations in favor of DCSS and against Plaintiff.  *Id*. ¶ 66.  Thereafter on October 6, 2023, Pacione allowed Plaintiff to have supervised visits with his child for two hours on the first and third weekends of each month, without providing a rationale for the supervision requirement.  *Id*. at ¶ 68.  In addition, Plaintiff was ordered to enroll in a co-parenting course even though he had previously completed the same.  The order further made Plaintiff responsible for the financial costs associated with the supervised visitation.  *Id*.

## II.    Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to

dismiss a plaintiff's complaint for failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency.  *N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983) (citing *Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981)).  A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984))

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide sufficient factual matter to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief).  A complaint satisfies the plausibility requirement if it contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all allegations put forth in the complaint and construe all facts and inferences in favor of the non-moving party.  *Erickson*, 551 U.S. at 94; *Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010).  The complaint need not include "detailed factual allegations," but must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (citations omitted).  The Court is "not 'required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'"  *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Pro se complaints are construed liberally and may only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir.

2014).  A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend unless the complaint's deficiencies cannot be cured by amendment.  *James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000); *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam).

**III.     Discussion**

**A.      Plaintiff's Claims Seeking Relief From State Court Orders are Barred by the *Rooker-Feldman* Doctrine**

The Superior Court Defendants and the County Defendants both argue that Plaintiff's claims against them should be dismissed under the *Rooker-Feldman* doctrine because the claims constitute a de facto appeal of a state court judgment.[4]  *See* (Doc. 17-1 p. 4-5; Doc. 16 p. 4).

Under the *Rooker-Feldman* doctrine, federal district courts may exercise only original jurisdiction; they may not exercise appellate jurisdiction over state court decisions.  *See District Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1986); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).  The *Rooker-Feldman* doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  The *Rooker-Feldman* doctrine applies even when the challenge to the state court decision involves federal constitutional issues.  *See Branson v. Nott*, 62 F.3d 287, 291 (9th Cir. 1995), overruled on other grounds by *Amphastar Pharm. Inc. v. Aventis Pharma SA*, 856 F.3d 696, 710 (9th Cir. 2017); *Dubinka v. Judges of the Super. Ct.*, 23 F.3d 218, 221 (9th Cir. 1994); *Worldwide Church of God v. McNair*, 805 F.2d 888, 891 (9th Cir. 1986).  Further, "*Rooker-Feldman* bars any suit that seeks to disrupt or 'undo' a prior state-court judgment, regardless of whether the state-court proceeding afforded

---

[4] The County Defendants raise a related argument that this Court should dismiss Plaintiff's claims under the principle of abstention in deference to ongoing state proceedings.  (Doc. 16 at 4-6) (*citing Younger v. Harris*, 401 U.S. 37 (1971)).  However, as Plaintiff explains in his opposition, "there are no ongoing state proceedings related to the specific claims raised in this complaint," and, hence, *Younger* abstention does not apply here. (Doc. 21 at 7) (citing Doc. 1 ¶¶ 6, 9-11, 61-64). *Cf. H.C. ex rel. Gordon v. Koppel*, 203 F.3d 610, 612 (9th Cir. 2000) ("Because we are not asked to review the merits of a final state judgment, but rather to enjoin ongoing state proceedings, we conclude that principles of abstention rather than *Rooker–Feldman*, govern this case.").  In fact, as the undersigned explains herein, Plaintiff's claims directly challenge final court and agency decisions and orders.

the federal-court plaintiff a full and fair opportunity to litigate [his] claims." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 901 (9th Cir. 2003) (internal quotation marks omitted).

To determine whether a claim is barred by the *Rooker-Feldman* doctrine, a court must first determine if the federal action contains a "forbidden de facto appeal" of a state court decision. *Noel v. Hall*, 341 F.3d 1148, 1156 (9th Cir. 2003). If the court finds a forbidden de facto appeal, the court cannot hear that portion of the case. Separately, a court must also refuse to decide any issue raised in the suit that is "inextricably intertwined" with an issue resolved by the state court decision. *Id.* at 1185; *see Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013) ("The 'inextricably intertwined' language … is not a test to determine whether a claim is a de facto appeal, but is rather a second and distinct step in the *Rooker–Feldman* analysis."). A claim is a "de facto appeal" where the plaintiff "complains of a legal wrong allegedly committed by the state court and seeks relief from the judgment of that court." *Noel*, 341 F.3d at 1163. Thus, for instance, where a federal claim "directly call[s] into question the state courts' judgments" on the grounds the state court deprived plaintiff of his liberty rights, the claim is barred by the *Rooker-Feldman* doctrine. *See Rickrode v. W.C.A.B.*, 191 F.3d 461 (9th Cir. 1999) (unpublished). Similarly, the *Rooker-Feldman* doctrine bars a plaintiff's claims that "the state courts' evidentiary and procedural errors deprived him of his federal constitutional rights" – in other words, where plaintiff "challenges the application of those rules in his [state court] proceedings." *Id.* (*citing inter alia Branson*, 62 F.3d at 292).

In support of their argument that the *Rooker-Feldman* doctrine applies to bar Plaintiff's claims here, Superior Court Defendants assert that all of Plaintiff's claims arise out of judicial decisions made during the state court proceedings and seek relief from the state court's actions and orders. For example, Plaintiff seeks relief through "the restoration of his parental rights." (Doc. 1 ¶ 198). Plaintiff also seeks an order "vacating" the state court's entry of default judgment and custody and visitation orders, and "reversal" of other orders, including the order directing he undergo drug testing. *Id.* ¶¶ 156, 159, 163. In addition, Plaintiff seeks "nullification" of judicial orders "erroneously filed or executed due to clerical mistakes or deviations from proper legal procedures, specifically those actions that directly contravened established protocols within the

1    judicial system." *Id.* ¶ 172; *cf. Rickrode,* 191 F.3d 461 (*Rooker-Feldman* doctrine bars a

2    plaintiff's claims that challenge "the state courts' evidentiary and procedural errors").

3          Although Plaintiff argues that the *Rooker-Feldman* doctrine does not bar his claims here

4    because he is not seeking to overturn any state court judgment and instead seeks relief based on

5    Defendants' engagement in actions outside of the judicial process (*see* Doc. 25 at 7-8), the

6    complaint's allegations and relief sought summarized above belie Plaintiff's assertion.  The

7    undersigned finds Plaintiff seeks relief that, if granted, would invalidate the complained-of state

8    court orders and, therefore, his action constitutes a "de facto appeal" of those orders barred under

9    the *Rooker-Feldman* doctrine.

10          Federal courts commonly conclude they lack jurisdiction under the *Rooker-Feldman*

11   doctrine to review orders of state courts addressing matters of family and custody law because

12   such claims constitute a de facto appeal of the state court decision.  *See, e.g.*, *Ignacio v. Judges of*

13   *the U.S. Ct. of Appeals for Ninth Circuit*, 453 F.3d 1160, 1165 (9th Cir. 2006) (finding no

14   jurisdiction where complaint amounts to a "long list of rambling grievances regarding the

15   determinations made by the California superior court in his domestic case."); *Moore v. County of*

16   *Butte*, 547 Fed. Appx. 826, 829 (9th Cir. 2013) (affirming district court's dismissal of plaintiff's

17   request to reverse the outcome of her divorce proceedings, child custody case, and domestic

18   violence hearings); *Tucker v. McBrien*, No. 2:23-cv-00526 DAD CKD (PS), 2023 WL 4848496,

19   at *3 (E.D. Cal. July 28, 2023) (finding *Rooker-Feldman* applicable to final orders from a family

20   court despite Plaintiff's argument that defendants ruled upon administrative proceedings); *Riley v.*

21   *Knowles*, No. 1:16-cv-0057-JLT, 2016 WL 259336, at *3 (E.D. Cal. Jan. 21, 2016) (finding

22   request to "vacate" family court order and child support debt to be a de facto appeal of state court

23   order directing plaintiff to pay child support); *Rucker v. Cnty. of Santa Clara*, No. C02-5981

24   JSW, 2003 WL 21440151, at *2 (N.D. Cal. June 17, 2003) (dismissing complaint challenging

25   original child support order because the implicated support arrearages were "inextricably

26   intertwined" with state court's ruling).

27          The *Rooker-Feldman* doctrine applies to Plaintiff's claims to the extent they challenge and

28   seek to undo the decisions and actions of the state courts.  "It is immaterial that [plaintiff] frames

10

1  his federal complaint as a constitutional challenge to the state courts' decisions, rather than as a

2  direct appeal of those decisions." *Bianchi*, 334 F.3d at 900 n.4.  As set forth above, Plaintiff's

3  reliance on *Exxon* is inapposite since although Plaintiff pleads that he is challenging

4  administrative processes, those pleadings are belied by Plaintiff's claims for violation of his

5  substantive due process rights and his requested relief (*e.g.,* for the Court to effectively overturn

6  an adverse state court order).

7      An exception to the *Rooker-Feldman* doctrine applies "where a party alleges extrinsic

8  fraud by an adverse party in procuring a state court judgment … because such a claim does not

9  challenge the state court decision directly."  *Benavidez v. Cnty. of San Diego*, 933 F.3d 1134,

10  1143 (9th Cir. 2021).  In *Benavidez*, parents brought a 1983 action against county social workers

11  for allegedly engaging in judicial deception in seeking a state juvenile court order to authorize

12  unconstitutional medical examinations of the nonconsenting parents' minor children.  *Id*. at 1140.

13  Specifically, the parents alleged that that social workers represented to the issuing state court that

14  they had made reasonable efforts to notify the parents about the requested medical examinations,

15  when, in fact, they had not.  *Id*. at 1146.  The parents did not become aware of the social workers'

16  misrepresentations to the state court until after the court had entered its order compelling the

17  medical examinations, and because they had been unable to challenge the misrepresentations, the

18  social workers' misrepresentations "were successful in deceiving the juvenile court."  *Id*. at 1143.

19  The Court affirmed that the *Rooker-Feldman* doctrine was inapplicable to the parents' 1983

20  claims because the parents did not "seek relief from or reversal of the juvenile court's Orders;"

21  rather, they sought relief for an extrinsic fraud that they could not remedy in the course of the

22  state court proceedings.  *Id*. at 1142, 1144.

23      The parties here do not address *Benavidez* or the extrinsic fraud corollary to the *Rooker-*

24  *Feldman* doctrine.  Nevertheless, the undersigned notes that, in addition to advancing various

25  generalized allegations of misrepresentation in his complaint, Plaintiff arguably makes a specific

26  allegation of fraud by Defendant DCSS and "court staff" on the state courts, both contained in the

27  complaint's ninth cause of action for "Fraud or Misrepresentation."  Specifically, Plaintiff alleges

28  DCSS made a "fraudulent misrepresentation," presumably to the state court, about the validity of

the VDOP that Plaintiff alleges he lawfully rescinded.  (Doc. 1 ¶¶ 107-10).  Such an allegation could constitute judicial deception and render the *Rooker-Feldman* doctrine inapplicable to the extent the misrepresentation was unchallenged by an adversary or successfully deceived the state court in issuing an improper order.  *See Benavidez*, 933 F.3d at 1147 (noting that a violation of the constitutional right to be free from judicial deception requires a showing that the misrepresentation was "material to the judicial decision").

However, other allegations in Plaintiff's complaint contradict that the state court's actions and orders here were the product of judicial deception.  Thus, Plaintiff alleges that Pacione granted Trujillo's petition "attributing the decision directly to [Plaintiff's] paternity recission." (Doc. 1 ¶ 54).  Plaintiff further alleges that he filed a demurrer challenging "the jurisdiction of the court based on the lack of a valid VDOP" and that Pacione nevertheless "said she was not going to dismiss the paternity action despite having a paternity recission form on file."  *Id.* at ¶¶ 58-59. So, unlike the parents in *Benavidez* who were unaware of the misrepresentations as those misrepresentations successfully were presented to an unknowing state court, here, Plaintiff pleads that he presented in the state court his challenge to the validity of the VDOP based on his alleged rescission and the state court was aware of Plaintiff's allegation but rejected the challenge.  As such, the extrinsic fraud corollary to the *Rooker-Feldman* doctrine does not apply here.

**B.      The Superior Court Defendants are Immune From Suit in Federal Court Under the Eleventh Amendment and the Common Law Doctrine of Judicial Immunity**

The Eleventh Amendment prohibits federal courts from hearing suits brought against a nonconsenting state.  *Munoz v. Super. Ct. of Los Angeles Cnty.*, 91 F.4th 977, 980 (9th Cir. 2024). "This prohibition applies when the "state or the 'arm of a state' is a defendant.""  *Id.* (quoting *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1422 (9th Cir. 1991)).  Thus, the Eleventh Amendment bars suits against state agencies as well as those where the state itself is named as a defendant. *Nat. Res. Def. Council v. Cal. Dep't of Transp.*, 96 F.3d 420, 421 (9th Cir. 1996).

In *Whole Woman's Health v. Jackson* (595 U.S. 30, 39 (2021)), the Supreme Court held that state-court judges and state-court clerks are immune from suit in federal court under the Eleventh Amendment.  The Court reasoned that these individuals are immune because they "do

1    not enforce state laws as executive officials might" and because any errors they make in

2    connection with their official duties can be remedied through "some form of appeal."  *See Munoz*,

3    91 F.4th at 981 (reiterating that "state court judges cannot be sued in federal court in their judicial

4    capacity under the Eleventh Amendment" and rejecting argument that *Ex parte Young* excepts

5    claims seeking injunctive relief against a state court judge).  For these same reasons, Defendants

6    Pacione, Marquez, Loo, and the Clerk of the Court enjoy immunity under the Eleventh

7    Amendment.  *See Aholelei v. Dept. of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) ("The

8    Eleventh Amendment bars suits for money damages in a federal court against a state, its agencies,

9    *and state officials in their official capacities*") (emphasis added) (citations omitted).

10        Pacione, Marquez, and Loo separately are immune from liability in this case under the

11   common law doctrine of judicial immunity.  *See Meek v. Cnty. of Riverside*, 183 F.3d 962, 965

12   (9th Cir.1999); *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995).  A similar immunity

13   attaches to the Clerk of the Court here because Plaintiff's allegations only implicate this

14   Defendant's discharge of official duties.  *See Mullis v. U.S. Bankr. Ct. for the Dist. of Nev.*, 828

15   F.2d 1385, 1390 (9th Cir. 1987) ("Court clerks have absolute quasi-judicial immunity from

16   damages for civil rights violations when they perform tasks that are an integral part of the judicial

17   process.").

18   **C.    The County Defendants are Not Immune From Liability**

19        The County Defendants do not argue that the Eleventh Amendment applies to shield them

20   from liability in the same manner it immunizes the Superior Court Defendants from suit here.

21   Instead, they argue they are immune from liability under the doctrines of quasi-judicial immunity,

22   qualified immunity, and quasi-prosecutorial immunity.[5] (Doc. 16 at 6-9).  However, County

23   Defendants cite no authority for the proposition that any of these immunities may attach to an

24   entire municipality or municipal agency; instead, these doctrines of immunity are limited to

25   shielding individual municipal employees from liability under certain circumstances.  *See*

26   *Coverdell v. Dep't of Soc. and Health Servs., State of Washington,* 834 F.2d 758, 764-65 (9th Cir.

27

28        [5] County Defendants also seemingly invoke immunity provisions set forth in California
     Government Code section 821.6, but acknowledge that "[s]tate immunity statutes do not offer protection
     from actions from under [42 U.S.C. § 1983].").  (Doc. 16 at 9).

1987) (holding child protective services worker immune from liability for seeking and executing court orders in furtherance of her municipal duties under doctrines of quasi-prosecutorial and quasi-judicial immunities).

**D.      Plaintiff Does not Adequately Allege Section 1983 Claims Against County Defendants**

"A local government entity is liable under § 1983 when 'action pursuant to official municipal policy of some nature cause[s] a constitutional tort.'" *Oviatt v. Pearce*, 954 F.2d 1470, 1473-74 (9th Cir. 1992) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). To establish a municipality's liability under *Monell*, a plaintiff "must show that (1) she was deprived of a constitutional right; (2) the [municipality] had a policy; (3) the policy amounted to a deliberate indifference to her constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Harmon v. City of Pocatello*, 854 Fed. Appx. 850, 854 (9th Cir. 2021). "The Supreme Court has made clear that policies can include written policies, unwritten customs and practices, failure to train municipal employees on avoiding certain obvious constitutional violations, and in rare instances, single constitutional violations are so inconsistent with constitutional rights that even such a single instance indicates at least deliberate indifference of the municipality." *Benavidez*, 993 F.3d at 1153.

Mere negligence in a municipal entity's training of its employees is not enough. "To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Id.* (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007)).

Plaintiff alleges that Defendant Kern County, through the actions of its employees and agents, including staff of Defendant DCSS, contributed to the deprivation of Plaintiff's familial rights through the issuance of custody orders and enforcement actions that were unjustified and lacked proper legal basis. (Doc. 1 ¶ 27). Kern County also failed to oversee the conduct of its employees, such as hospital staff involved in presenting to Plaintiff a Voluntary Declaration of

14

1   Paternity without adequate disclosure.  *Id*.  Plaintiff also seeks "[a]n order directing DCSS to

2   cease all enforcement actions against SHAWN MAXWELL that are premised on the invalidated

3   VDOP, including any attempts to establish paternity or enforce child support obligations." *Id*. at ¶

4   193.  Plaintiff also alleges that DCSS impermissibly sought a default judgment against him.  *Id.* ¶

5   66.

6          Plaintiff argues in opposition to County Defendants' motion that the complaint adequately

7   details policies and practices "that led to the violation of my rights" and alleges that DCSS "failed

8   to properly train its employees, leading to the violation of my rights" (Doc. 21 at 8, citing Doc. 1

9   ¶¶ 57-60, 65-66).  However, the complaint does not identify any specific policy or any specific

10  practice adopted by County Defendants that caused or resulted in Plaintiff's alleged constitutional

11  harm; at most, the complaint alleges a singular incident of Plaintiff being presented with and

12  signing the VDOP at the hospital without being adequately informed.  (Doc. 1 ¶¶ 27, 57-60, 65-

13  66).

14         "Single acts may trigger municipal liability where 'fault and causation' were clearly

15  traceable to a municipality's legislative body or some other authorized decisionmaker."

16  *Benavidez*, 933 F.3d at 1153.  Here, the complaint does not adequately allege policies, practices

17  and/or training by County Defendants with sufficient clarity to state a cognizable *Monell* claim.

18  **E.     Leave to Amend Plaintiff's Claims Against Superior Court Defendants Would be**

19         **Futile**

20         The Court of Appeals has "repeatedly held that 'a district court should grant leave to

21  amend even if no request to amend the pleading was made, unless it determines that the pleading

22  could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

23  1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

24  "The decision of whether to grant leave to amend nevertheless remains within the discretion of

25  the district court," which may deny leave to amend if allowing amendment would unduly

26  prejudice the opposing party, cause undue delay, or be futile, or if the party seeking amendment

27  has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

28         Here, the Court finds Plaintiff's claims as asserted against the Superior Court Defendants

1   are barred by the *Rooker-Feldman* doctrine or otherwise barred since those defendants are

2   immune under the Eleventh Amendment and judicial immunity.  Leave to amend the complaint

3   would be futile since those jurisdictional bars cannot be cured.  Plaintiff's claims against the

4   Superior Court Defendants should be dismissed without leave to amend.

5   **F.    Leave to Amend Plaintiff's Claims Against County Defendants Would Not be Futile**

6          Although Plaintiff has failed to state any cognizable Section 1983 claim against County

7   Defendants, the undersigned is unable to conclude that Plaintiff could not possibly cure the

8   deficiencies identified above by alleging other facts in a manner that the claim would be

9   cognizable and would not be barred by the *Rooker-Feldman* doctrine (*i.e.*, because the claim

10  would amount to a de facto appeal of or be inextricably intertwined with a state court's order).

11         Although the undersigned will recommend Plaintiff be granted leave to amend his

12  complaint as to County Defendants, the undersigned reiterates that the *Rooker-Feldman* doctrine

13  bars this Court from reviewing claims that seek a de facto appeal of or otherwise are inextricably

14  intertwined with a state court's orders.  Thus, claims based on County Defendants' undertaking of

15  enforcement actions of the state court's orders likely are barred.  *E.g.*, *Miroth v. Cnty. of Trinity*,

16  No. 2:22-cv-00460-KJM-JDP, 2023 WL 2976303, at *5 (E.D. Cal. Apr. 17, 2023) ("Plaintiffs are

17  seeking damages to remedy the consequences of the state court proceedings—i.e., the removal

18  and continued detention of their children. As such, plaintiffs are seeking relief from the

19  consequences of those judgments. Thus, even if plaintiffs are allegedly no longer seeking the

20  reversal of the state court decisions and requesting only damages, in effect, plaintiffs are asking

21  the court to scrutinize the decisions of the state courts and find they were in error").[6]

22  **G.    Defendants' Trujillo and Leon's Motions to Strike**

23         "When a district court 'has dismissed all claims over which it has original jurisdiction,' it

24  'may decline to exercise supplemental jurisdiction' over remaining state law claims."  *Pell v.*

25  *Nuñez*, 99 F.4th 1128, 1135 (9th Cir. 2024) (quoting 28 U.S.C. § 1367(a)).  Indeed, the Court

26

27         [6] Plaintiff does not plead in his complaint that he complied with the California Government Claims
    Act (GCA).  However, because he argues in opposition to County Defendants' motion that he did, in fact,
28  comply with the GCA (Doc. 21 at 7-8), leave to amend is appropriate to remedy any current deficiency.

generally "should decline the exercise of jurisdiction" if "the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well.").

Here, the undersigned has concluded that either the Court lacks subject matter jurisdiction over Plaintiff's claims, the relevant defendants are immune from liability, or the complaint does not state any cognizable claims pursuant to 42 U.S.C. § 1983. As such, the undersigned recommends that the Court decline to exercise jurisdiction over any remaining, viable state law causes of action.

Defendants Leon and Trujillo are named only in Plaintiff's state law causes of action (Defendant Trujillo in Cause of Action No. 10 for invasion of privacy, and both Defendants Leon and Trujillo in Cause of Action No. 16 for frivolous litigation/abuse of process).[7] Notwithstanding that this Court may lack jurisdiction over these Defendants in the event Plaintiff is unable to plead a cognizable claim against other Defendants pursuant to 42 U.S.C. § 1983, the Court is authorized to consider the pending motions to strike brought by Defendants Leon and Trujillo pursuant to California's anti-Strategic Lawsuit Against Public Participation ("anti-SLAPP") law, California Code of Civil Procedure § 425.16. Accordingly, the undersigned addresses those motions below.

**1.     California's Anti-SLAPP Law**

Section 425.16 permits the striking of state law claims that "masquerade as ordinary lawsuits but are intended to deter ordinary people from exercising their political or legal rights or to punish them from doing so." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013). (citations and quotations omitted).

California courts consider anti-SLAPP motions in two steps. "First, a defendant 'must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the

---

[7] The undersigned addresses below arguments Plaintiff presents or suggests in opposing the motions to strike that the Court has subject matter jurisdiction over claims implicating Leon and Trujillo.

1    defendant's rights of petition or free speech.'"  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

2    1110 (9th Cir. 2003) (quoting *Globetrotter Software Inc, v. Elan Comput. Grp., Inc.*, 63 F.

3    Supp.2d 1127, 1129 (N.D. Cal. 1999)).  "The defendant need not show that the plaintiff's suit was

4    brought with the intention to chill the defendant's speech; the plaintiff's 'intentions are ultimately

5    beside the point.'"  *Id.* (quoting *Equilon Enters., LLC v. Consumer Cause Inc.*, 29 Cal.4th 53, 67

6    (2002)).

7         Second, once the defendant makes the prima facie showing, the burden then shifts to the

8    plaintiff to demonstrate a probability of prevailing on the challenged claims.  *Id.*  In federal court,

9    the proper standard depends on whether the motion to strike challenges the factual or legal

10   sufficiency of the complaint.  Where, as in this case, the anti-SLAPP motions challenge only the

11   legal sufficiency of a plaintiff's complaint, the Rule 12(b)(6) standard for failure to state a claim

12   applies.  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress*, 890 F.3d 828, 834

13   (9th Cir.), *as amended* 897 F.3d 1224 (9th Cir. 2018).

14        The anti-SLAPP statute applies to all petitions or communications "made in connection

15   with an issue under consideration or review by a legislative, executive, or judicial body, or any

16   other official proceeding authorized by law."  Cal. Code of Civ. Proc. § 425.16(e)(2); *Paul v.*

17   *Friedman*, 95 Cal. App.4th 853, 866 (2002).  Attorneys representing clients in litigation may also

18   invoke the anti-SLAPP statute in lawsuits based on services performed on behalf of their clients.

19   *Predi-Wave Corp. v. Simpson Thatcher & Bartlett LLC*, 179 Cal. App.4th 1204, 1220-1221

20   (2009).

21        Courts generally find that abuse of process claims arise from protected activity.  *See*

22   *Raining Data Corp. v. Barrenechea*, 175 Cal. App.4th 1363, 1368 (2009) (stating that the abuse

23   of process claims "by definition" arise from protected activity); *United Tactical Sys., LLC v. Real*

24   *Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1008 (N.D. Cal. 2015) (same); *see also Travelers*

25   *Prop. Cas. Co. of Am. v. KLA-Tencor Corp.*, 45 Cal. App.5th 156, 165 (2020) (noting that an

26   abuse of process claim is "commonly understood to be premised on actions in *legal*

27   *proceedings*").  Indeed, "it is hard to imagine an abuse of process claim that would not" arise

28   from protected activity since an abuse of process claim essentially involves the misusing or

18

1  misapplying the legal process for an "end other than that which it was designed to accomplish."

2  *Booker v. Rountree*, 155 Cal. App.4th 1366, 1370 (2007); *Lunsford v. Am. Guarantee & Liab.*

3  *Ins. Co.*, 18 F.3d 653, 655 (9th Cir. 1994).

4      **2.     The Court's Discretion to Consider or Decline to Review Anti-SLAPP Motion**

5          Where an action is dismissed pursuant to Rule 12(b)(6), a court has discretion to either

6  deem a parallel anti-SLAPP motion to be moot or to rule on the motion. *Cf. McMillan v. Chaker*,

7  791 Fed. Appx. 666, 667 (9th Cir. Jan. 27, 2020) ("the district court did not abuse its discretion

8  by refusing to exercise supplemental jurisdiction over the remaining state law claim after properly

9  dismissing the [federal] claims… [a]nd without a state law claim, it was proper for the district

10  court to decline to address the anti-SLAPP motion."); *Jayaton-Kerry v. Cooper*, No. 2:23-cv-

11  02298 TLN AC PS, 2024 WL 216265, at *10 n.9 (E.D. Cal. Jan. 19, 2024) (declining to address

12  motions to strike under Anti-SLAPP statute after declining supplemental jurisdiction over

13  pendent state law claims), *adopted by* 2024 WL 1576510 (E.D. Cal. Apr. 11, 2024); *Nelson v.*

14  *Nelson*, No. 2:17-cv-1333-EFB, 2018 WL 1392885, at *3 n.6 (E.D. Cal. Mar. 20, 2018) (denying

15  anti-SLAPP motion to strike as moot after declining to exercise supplemental jurisdiction over

16  plaintiff's state law claims); *Choyce v. SF Bay Area Indep. Media Ctr.*, No. 13-cv-01842-JST,

17  2014 WL 2451122, at *6 (N.D. Cal. June 2, 2014) (finding defendants had no presumptive right

18  to have anti-SLAPP motion before federal court after the court declined to exercise jurisdiction

19  over state law claims) <u>with</u> *U.S. News & World Report, L.P. v. Chiu*, No. 24-cv-00395-WHO,

20  2024 WL 2031635, at * 17 (N.D. Cal. May 7, 2024) ("exempt[ing] a plaintiff's claims from the

21  reach of the anti-SLAPP statute because they fail for a reason unrelated to their substantive merit

22  would open up new avenues for harassing and retaliatory litigation; it would permit plaintiffs to

23  bypass the protections of the anti-SLAPP statute simply by filing suit in a tribunal that has no

24  power to entertain the claim.") (quoting *Barry v. State Bar of Cal.*, 2 Cal.5th 318, 325 (2017));

25  *Wigington v. MacMartin*, No. 2:21-cv-02355-KJM-DMC, 2022 WL 3999887, at *4 (E.D. Cal.

26  Sept. 1, 2022) (resolving anti-SLAPP motion despite lacking personal jurisdiction over a

27  defendant) (citing *Barry*); *Williams v. Kula*, No. 20-CV-1120 TWR (AHG), 2020 WL 7770915,

28  at 7-8 (S.D. Cal. Dec. 29, 2020) (same).

1          **3.      Leon's Anti-SLAPP Motion to Strike – Discussion**

2          Defendant Leon is named only in Plaintiff's state law cause of action for frivolous

3   litigation/abuse of process (claim number 16).  Specifically, Plaintiff alleges that Leon served a

4   "pivotal role in prosecuting actions against Plaintiff that appear to lack merit and substance."

5   (Doc. 1 ¶ 142).  According to the complaint, these actions include "claims for paternity and child

6   support that contradict available evidence and legal standards, specifically following the valid

7   rescission of the Voluntary Declaration of Paternity (VDOP) by Plaintiff within the statutorily

8   permitted period." *Id.* ¶ 143.  Plaintiff further alleges that these legal actions "have been

9   facilitated through the pursuit of fee waivers" that are "frivolous" and "rais[e] questions about the

10  ethical and legal propriety of the litigation pursued."  *Id.* ¶¶ 142, 144.  Plaintiff alleges that Leon

11  abused the legal process by using the Court to harass and financially deplete Plaintiff without just

12  cause. *Id.* ¶ 145.

13         In opposing Leon's motion, Plaintiff concedes that his claims against him arise from

14  Leon's involvement in "the judicial and administrative processes, including prosecuting actions"

15  Plaintiff claims are meritless.  (Doc. 36 at 6).  Plaintiff also argues his claims against Leon relate

16  to Leon's alleged representation of Trujillo in filing a petition to establish parental relationship.

17  These arguments corroborate what is plain in the complaint:  Plaintiff's claims against Leon seek

18  relief solely arising from Leon's involvement in actions under consideration or review by an

19  executive or judicial body or other official proceeding authorized by law.  *See* Cal. Code of Civ.

20  Proc. § 425.16(e)(2).

21         Plaintiff counters that his claims against Leon also are based on Leon's supposed

22  presentation to the state court of a request that Plaintiff submit to a drug test in violation of the

23  Fourth Amendment.  (Doc. 36 at 14).  First, this allegation does not appear in the complaint.

24  Second, even if it did, the allegation that seeking authorization from a court to require a party to

25  undergo a drug test qualifies as petitioning activity under Cal. Code of Civ. Proc. § 425.16(e)(2).

26  Third, the assertion that an attorney's request of a court to authorize a drug test violates the

27  Fourth Amendment's proscription against unreasonable searches and seizures is frivolous.  While

28  under certain circumstances a court-authorized search may violate the Fourth Amendment,

1    Plaintiff cites no authority for the proposition that a private attorney may violate the Fourth

2    Amendment merely by applying for a court order.

3          Because Leon has made a prima facie showing that Plaintiff's claims arises from an act in

4    furtherance of Leon's rights of petition, the burden shifts to Plaintiff to demonstrate a probability

5    of prevailing on his challenged claims.  Plaintiff cannot meet his burden.  That is because, under

6    California law, a "litigation privilege" exists "to afford litigants and witnesses free access to the

7    courts without fear of being harassed subsequently by derivative tort actions, to encourage open

8    channels of communication and zealous advocacy, to promote complete and truthful testimony, to

9    give finality to judgments, and to avoid unending litigation." *Rusheen v. Cohen*, 37 Cal.4th 1048,

10   1063 (2006).  The privilege is absolute and is broadly construed to effectuate these purposes, even

11   when it means litigants cannot recover damages for injurious publications made in judicial

12   proceedings.  *Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal.4th 1232, 1241

13   (2007).

14         The litigation privilege of California Civil Code section 47(b) applies "to any

15   communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other

16   participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some

17   connection or logical relation to the action."  *Silberg v. Anderson*, 50 Cal.3d 205, 212 (1990) (en

18   banc).  "Anti-SLAPP motions targeting litigation activity" through abuse of process claims "are

19   routinely granted based on the litigation privilege." *Microsoft Corp. v. M. Media*, No. CV-17-

20   347-MWF (AJWx), 2018 WL 5094969, at *7 (C.D. Cal. Mar. 13, 2018) (collecting cases).

21         All four elements of the litigation privilege are met here. First, the statements and actions

22   that Plaintiff alleges constitute an abuse of process were made in judicial proceedings.  *See*

23   *Silberg*, 50 Cal.3d at 212.  Second, Leon was an authorized participant as counsel for Trujillo in

24   the proceeding.  *See Greenway v. Blonska*, No. SACV 13-01073-CJC(RNBx), 2013 WL

25   12126095, at *5 (C.D. Cal. Oct. 11, 2013).  The third and fourth elements "[i]n practice ... are

26   merged into a single inquiry" – as applied here, Leon's statements had at least "some relation" to

27   the matters the courts were considering.  *Butkus v. Downtown Athletic Club of Orlando, Inc.*, No.

28   CV 07-2507 PA (JWJx), 2008 WL 11338099, at *4 (C.D. Cal. Mar. 10, 2008); *see Kimes v.*

21

1   *Stone*, 84 F.3d 1121, 1126 (9th Cir. 1996) ("For well over a century, communications with 'some

2   relation' to judicial proceedings have been absolutely immune from tort liability by the

3   [litigation] privilege.").

4        Contrary to Plaintiff's arguments, the litigation privilege applies even when the statements

5   made in court are false or perjurious. *Rusheen*, 37 Cal.4th at 1058; *Holland v. Jones*, 210 Cal.

6   App. 4th 378, 382 (2012) (explaining that tort claims based on "statements, whether true or false

7   or made with malice or without" in a declaration filed in judicial proceedings "fall squarely

8   within the litigation privilege.").  Since the litigation privilege is applicable, Plaintiff is unable to

9   show a probability of success on his claims.  *See Weiser Law Firm, P.C. v. Hartleib*, No. SACV

10  23-00171-CJC (JDEx), 2023 WL 4291982, at *8 (C.D. Cal. May 8, 2023) (striking claim for

11  defamation after finding it had no probability of success due to the litigation privilege); *March v.*

12  *Twin Cities Police Auth.*, No. 14-00512 SI, 2014 WL 3725931, at *12 (N.D. Cal. July 25, 2014)

13  (granting anti-SLAPP motion because plaintiff failed to show a probability to prevail on abuse of

14  process claim since the claim was barred by the litigation privilege).

15        **4.    Trujillo's Anti-SLAPP Motion to Strike – Discussion**

16        Defendant Trujillo is named in Plaintiff's state law causes of action for invasion of

17  privacy (claim number 10) and for frivolous litigation/abuse of process (claim number 16).  In

18  addition, liberally construing the complaint, Trujillo also is included as a "defendant" generally

19  named in claims 4, 6, 9, 12, 13 and 15.[8]  For the same reasons noted above in recommending

20  granting Leon's anti-SLAPP motion as to the frivolous litigation/abuse of process claim, the

21  undersign will recommend granting Trujillo's motion as to the same claim.

22        All of Plaintiff's other causes of action asserted against Trujillo likewise appear to relate

23  to her filing and petition for child support and, thus, are subject to the litigation privilege to the

24  same extent that it insulates her from liability for the frivolous litigation/abuse of process claim.

25  This proposition applies even to Plaintiff's negligent infliction of emotional distress claim.  *See*

26

27        [8] Trujillo identifies these claims in her motion as the causes of action for which she is not named
    but which she construes to be asserted against her (Doc. 19-1 at 2); Plaintiff does not challenge this the
28  characterization of his complaint.  *See generally* (Doc. 22).

1    *Berman v. McManus*, No. 2:11-cv-000635 MCE KJN PS, 2011 WL 2144411, at *18 (E.D. Cal.

2    May 31, 2011) *adopted by* 2011 WL 3419530 (E.D. Cal. Jul. 28, 2011) (finding various claims

3    against attorney in underlying family law action, including fraud and negligent infliction of

4    emotional distress, to be barred by the litigation privilege) (citing *Walker v. Kiousis*, 93 Cal.

5    App.4th 1432, 1439 (2001); *Action Apartment Assn. Inc. v. Cty. of Santa Monica*, 41 Cal.4th

6    1232, 1241-42 (2007)).  Indeed, the litigation privilege "bars all tort causes of action except

7    malicious prosecution." *Jacob B v. Cnty. of Shasta*, 40 Cal.4th 948, 960 (2007) (finding Section

8    47(b) applicable to privacy causes of action regardless of whether they are labeled under common

9    law, statute, or Constitutional law).  It is evident that Plaintiff's various claims against Defendant

10   Trujillo, though not clearly stated, amount to tort claims related to her participation in the

11   underlying state court and child custody proceedings.

12        Plaintiff's opposition (Doc. 22), and improper sur-reply (Doc. 42) further reinforce the

13   undersigned's conclusion regarding the applicability of the litigation privilege here.[9]  For

14   example, Plaintiff argues "Monica Meza Trujillo petitioned the court under false pretenses,

15   alleging that I was an absent parent despite us living together and me being involved in my

16   daughter's life every day" (Doc. 22 at 8-9), and "Leon pursued a meritless paternity and child

17   support case despite knowing I was not an absent parent." (Doc. 46 p. 6).

18        In opposing Trujillo's motion, Plaintiff makes various arguments seeking to recharacterize

19   Trujillo's pleaded conduct and actions as not related to litigation and, thus, not protected by the

20   privilege.  For instance, he asserts that Trujillo's misuse of his social security number is not an

21   authorized activity under the Family Code and constitutes fraud and identity theft.  (Doc. 22 at 6-

22   7, 8-9; Doc. 42 at 7).  Even were the Court to merit Plaintiff's re-characterization of certain

23   conduct as unrelated to litigation, it is clear from the gravamen of Plaintiff's complaint and

24   further filings that he seeks redress for Trujillo's petitioning activities.  *See Predi-Wave*, 179 Cal.

25   App. at 1219 (when pleadings contain allegations regarding both protected and unprotected

26   activity, the "gravamen" of the plaintiff's cause of action determines whether the anti-SLAPP

27   _____

28        [9] Plaintiff has filed three sur-replies (Docs. 37, 42, 46) without first seeking leave of the Court, as
     required by Local Rule 230(m).

1   statute is applicable).

2                           *       *       *       *       *

3         Given the undersigned's conclusion that the litigation privilege applies, Leon and Trujillo

4   should be dismissed with prejudice as any amendment to Plaintiff's complaint in an attempt to

5   rehabilitate the claims would be futile.  *See Grant & Eisenhofer, P.A. v. Brown*, No. CV 17-5968

6   PSG (PJWx), 2017 WL 6343506, at *9 (C.D. Cal. Dec. 6, 2017) (dismissing claims subject to the

7   litigation privilege since "[n]o amendment could overcome these substantive hurdles…");

8   *Microsoft Corp.*, 2018 WL 5094969, at *7 (finding that since a defendant's counterclaims are

9   barred by the litigation privilege, they "cannot possibly remedy their claims.")

10  **IV.     Conclusion and Recommendation**

11        Plaintiff's claims against the Superior Court Defendants are barred by the *Rooker-*

12  *Feldman* doctrine.  The Superior Court Defendants additionally are immune from liability under

13  the Eleventh Amendment and other common law immunities.  These deficiencies cannot be cured

14  by amendment of Plaintiff's complaint.

15        Further, the County Defendants, although not immune from liability, cannot be liable

16  under the *Rooker-Feldman* doctrine for Plaintiff's claims to the extent the claims are inextricably

17  intertwined with the County Defendants' enforcement of orders of the state court within the

18  jurisdiction of DCSS.  In addition, Plaintiff has not pleaded any cognizable *Monell* claim against

19  County Defendants under 42 U.S.C. § 1983.  These deficiencies may be cured by amendment of

20  Plaintiff's complaint.

21        Finally, Defendants Trujillo and Leon cannot be liable for Plaintiff's claims in light of

22  California's litigation privilege.  This deficiency cannot be cured by amendment of Plaintiff's

23  complaint.  In addition, they should be awarded attorney's fees under California's Anti-SLAPP

24  statute.

25        Accordingly, for the foregoing reasons, the Cour directs the Clerk of the Court to

26  terminate Plaintiff's withdrawn motion for default judgment (Doc. 41).

27        And it is HEREBY RECOMMENDED:

28        1.  Plaintiff's claims against the Superior Court Defendants be DISMISSED WITH

                                              24

1  PREJUDICE;

2      2.  Plaintiff's claims against the County Defendants be DISMISSED WITHOUT

3  PREJUDICE;

4      3.  Plaintiff's claims against Defendant Leon and Defendant Trujillo be DISMISSED

5  WITH PREJUDICE;

6      4.  The Anti-SLAPP motions by Defendant Leon and Defendant Trujillo be GRANTED

7  and they be awarded attorney's fees;

8      5.  Plaintiff be granted leave to amend his complaint to the extent of pleading *Monell* and

9  any cognizable state law causes of action against the County Defendants.

10      These findings and recommendations are submitted to the district judge assigned to this

11  action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within 21 days of

12  service of these findings and recommendations, any party may file written objections with the

13  Court and serve a copy on all parties.  Such a document should be captioned "Objections to

14  Magistrate Judge's Findings and Recommendations."  The district judge will review the

15  magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The

16  parties are advised that failure to file objections within the specified time may waive the right to

17  appeal the district judge's order.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014)

18  (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

19  IT IS SO ORDERED.

20      Dated:   __August 16, 2024__

21      _____

    UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28